J-A01002-26

2026 PA Super 93

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN ERIC SEIDEN | : | |
| | : | |
| Appellant | : | No. 34 EDA 2025 |

Appeal from the Judgment of Sentence Entered July 15, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0003824-2023

BEFORE:  DUBOW, J., KUNSELMAN, J., and SULLIVAN, J.

OPINION BY DUBOW, J.:                          **FILED MAY 06, 2026**

Appellant, Steven Eric Seiden, appeals from the July 15, 2024 judgment of sentence of 5 to 23 months of incarceration followed by 3 years of probation entered in the Montgomery County Court of Common Pleas following his open guilty plea to Endangering the Welfare of Children—Course of Conduct ("EWOC").[1]  After careful review, we affirm Appellant's judgment of sentence in part, vacate in part, and remand with instructions.

The relevant facts and procedural history are as follows.  On January 16, 2023, the Commonwealth charged Appellant with one count each of EWOC—Course of Conduct, Disseminating Explicit Sexual Materials to a Minor, Unlawful Contact or Communication with a Minor relating to Open Lewdness, Unlawful Contact or Communication with Minor relating to Obscene Material, Corruption of Minors relating to sexual offenses, Corruption of Minors,

_____

[1] 18 Pa.C.S. § 4304(a)(1).

Indecent Exposure, Open Lewdness, Selling or Furnishing Liquor to Minors, and two counts of Invasion of Privacy.

On May 1, 2024, Appellant entered an open guilty plea to one count of EWOC—Course of Conduct, a third-degree felony.[2]  In exchange for his guilty plea, the Commonwealth agreed to *nolle pros* all other charged offenses, including those which were sexual in nature.

At the plea hearing, Appellant admitted that, between January 1, 2016, and December 31, 2021, he was a guardian of a minor ("Victim"), who was at all relevant times under 18 years old.  He further admitted that he knowingly endangered the Victim's welfare by violating a duty of care and protection by providing the Victim with drugs, alcohol, and inappropriate materials.  Most importantly to our analysis, Appellant's plea did not include admitting to any facts about any inappropriate sexual conduct and the Commonwealth *nolle prossed* any charges related to inappropriate sexual conduct.

With respect to sentencing, the parties agreed to a sentencing cap of 5 to 23 months of incarceration followed by a term of probation to be set by the trial court.  The trial court also ordered the preparation of a psychosexual evaluation and a presentence investigation ("PSI") report.

On July 15, 2024, Appellant appeared for sentencing where both the Commonwealth and Appellant's counsel presented the trial court with a psychosexual evaluation.  Mary Young prepared the report submitted by the

---

[2] At the time of the guilty plea, Appellant was 69 years old.

Commonwealth ("Commonwealth's Psychosexual Evaluation") and Dr. Frank Datillio prepared the Appellant's report ("Appellant's Psychosexual Evaluation").

At the commencement of the sentencing hearing, Appellant's counsel objected to the court's consideration of the Commonwealth's Psychosexual Evaluation for three reasons: (1) counsel only received a copy of it by email the day before; (2) Ms. Young failed to indicate that she held any of the opinions expressed in the report to a reasonable degree of professional certainty; and (3) Ms. Young had based the opinions in her report on all the factual allegations contained in the affidavit of probable cause, including those underlying the sexually-based charges that the Commonwealth *nolle prossed*.[3]

The trial court acknowledged that Appellant's counsel had just received the Commonwealth's Psychosexual Evaluation and offered to continue the sentencing hearing to provide Appellant's counsel with more time to review it. Counsel declined the offer. The trial court then imposed the agreed-upon custodial sentence and a term of three years of probation.

The trial court next addressed the conditions of probation. The trial court indicated that it had considered, *inter alia*, the Commonwealth's Psychosexual Evaluation, Appellant's Psychosexual Evaluation, the PSI report,

_____

[3] Appellant's counsel also objected to the court considering the PSI report, noting that two of its pages were also "essentially cop[ied] and paste[d]" from the factual allegations set forth in the affidavit of probable cause. N.T. Hr'g, 7/15/24, at 6. Appellant does not raise this challenge on appeal.

and several character letters. The trial court, in its subsequent written sentencing order that it issued later that day, imposed all the conditions recommended in the Commonwealth's Psychosexual Evaluation, including those that addressed rehabilitation for inappropriate sexual conduct.[4]

On July 25, 2024, Appellant filed a timely post-sentence motion, claiming the court improperly relied on the Commonwealth's Psychosexual Evaluation because: (1) it was not signed by the evaluator; (2) the evaluator did not offer her findings, opinions, and recommendations to a reasonable degree of psychological certainty; (3) the evaluation relied upon facts to which counsel and Appellant had not agreed at the time of the guilty plea; (4) the evaluation did not contain any definitive treatment recommendations or outline any rules and regulations; and (5) the Commonwealth produced the evaluation untimely. Motion, 7/25/24, at ¶ 12(a)(i-v).

Appellant further contended that the court abused its discretion when ordering Appellant to comply with Commonwealth's Psychosexual Evaluation because: (1) "that condition is not sufficiently justified based on the agreed[-]upon facts of the guilty plea which were non-sexual in nature"; (2) compliance does not serve Appellant's rehabilitative needs; and (3) compliance is unreasonable, inappropriate, and punitive. *Id.* at ¶ 12(b-d). Appellant last claimed that because the court's oral sentencing order did not

_____

[4] We note that the trial court did not announce these conditions in open court, but only in the sentencing order it issued later that day. We address the legal relevancy of this *infra.*

- 4 -

require him to comply with the Commonwealth's Psychosexual Evaluation, "this condition was not properly ordered by the [c]ourt and should be removed as part of the sentence." *Id.* at ¶ 12(e)

Following a hearing, the court denied Appellant's post-sentence motion. This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

\*\*\*

Appellant raises the following four issues on appeal:

1. Whether the honorable trial court erred by ordering Appellant to comply with the psychosexual evaluation as that condition of probation is not sufficiently justified based on the agreed[-]upon facts of the guilty plea?

2. Whether the honorable trial court abused its discretion at sentencing when ordering Appellant to comply with the psychosexual evaluation because it relied on facts that were never proven?

3. Whether the honorable trial court improperly accepted and relied upon the psychosexual evaluation written by Mary Young because the report improperly relied upon facts that were not proven, the conditions therein violate Appellant's due process rights and are void for vagueness, the unsigned report contained opinions not held to a reasonable degree of professional certainty, and was untimely?

4. Whether the condition of sentence to comply with the psychosexual evaluation was improperly ordered because that probation condition was never placed on the record in open court?

Appellant's Br. at 4-5 (unnecessary capitalization omitted).

\*\*\*

- 5 -

The Commonwealth's Psychosexual Evaluation contains recommendations that address rehabilitation for inappropriate sexual conduct as well as other inappropriate conduct. The trial court imposed both types of recommendations as conditions of probation.[5] Appellant challenges the

_____

[5] The Commonwealth's Psychosexual Evaluation contains as probation conditions the following the 10 "Issues of Concern for Supervision" and 5 "Issues of Concern for Treatment":

Issues of Concern for Supervision

1. [Appellant] should be supervised by officer's [*sic*] familiar with community sex offender supervision and should be placed on restrictions standard for individuals who have committed sexually motivated offenses. As he progresses in treatment and supervision, some of those restrictions can be reconsidered.

2. [Appellant] should have no contact with minors or vulnerable adults. Proximal contact should be supervised by an approved chaperone. An approved chaperone is someone who has been educated on the dynamics of sexual offending, who is aware of [Appellant's] full offense history, and who is willing to share responsibility for the safety of the minor or vulnerable adult being supervised.

3. Special precaution should be paid to [Appellant's] living situation given that children visit the home.

4. It is noted that [Appellant] has ongoing contact/resides with a minor. It is recommended that this not be allowed to continue until evidence is found that he is not a threat to these children and/or until his treatment and supervisory team agree that he has made sufficient progress in treatment.

5. [Appellant] should have no contact, either direct or indirect, with his victim. It is unlikely there is any compelling reason for [Appellant] to have contact with his victim at any point in the future.

*(Footnote Continued Next Page)*

6. [Appellant] should not be permitted to accept employment in positions that place him around or in supervision capacity with minors, *e.g.*, fast food restaurants.

7. [Appellant] should not be allowed to spend time in environments that draw children and/or teenagers (*i.e.*, shopping malls, parks, or playgrounds, etc.).

8. [Appellant] should likely have restricted and/or monitored access to the Internet. Any permitted access should exclude use of social networking sites. [Appellant] should be permitted no access to pornography and should not be permitted to attend establishments that promote sexual activity or other association with sexually stimulating materials or events.

9. [Appellant] should be restricted from any use of alcohol or mood-altering substances. It is noted that he is currently using alcohol, and it is recommended this practice be stopped given his volatility and problematic history with substances. Detection of use should be met with immediate intervention and considered an acute risk factor.

10. [Appellant] should be instructed to keep his treatment and supervisory team aware of any budding relationships. He should avoid relationships with women who have children and should be instructed to make all potential partners aware of his offense history.

Issues of Concern for Treatment

11. [Appellant] appears to have characteristics associated with fair treatment amenability. It is recommended that Appellant be referred to a community-based sex offender treatment program adhering to treatment guidelines established by the Association for the Treatment of Sexual Abusers (A.T.S.A.).

12. Given presently known information, [Appellant] most closely exemplifies the Avoidant-Active Offense Pathway. Treatment interventions found to be effective with these offenders typically include changing or improving existing coping skills, improving decision-making skills, increasing emotional regulatory strategies, and identifying and restructuring offense-supportive cognitive

*(Footnote Continued Next Page)*

imposition of the recommendations in the Commonwealth's Psychosexual Evaluation generally, as well as the imposition of the specific recommendations related to inappropriate sexual conduct. *Id.* at 25-52. Following our review, we agree with Appellant that the trial court abused its discretion in imposing the treatment and supervision recommendations related to inappropriate sexual conduct. We will, thus, address those issues first. We will then address Appellant's argument that the trial court erred in imposing any of the recommendations in the Commonwealth's Psychosexual Evaluation.

_____

distoltions [*sic*]. It is recommended that these treatment targets be included as part of a comprehensive treatment program.

13. [Appellant] has a history of substance abuse that appears to have been a contributing factor for his offense. He should be encouraged to participate in ongoing treatment or a twelve-step program such as Alcoholics or Narcotics Anonymous to support his continued sobriety.

14. [Appellant] should be administered a full disclosure polygraph examination to determine the full extent of his sexual offending history upon which a comprehensive treatment plan can be developed. A specific issue polygraph related to his known offenses may be helpful in increasing motivation for treatment participation. [Appellant] should also undergo regularly scheduled maintenance polygraph examinations to help ensure compliance and community safety.

15. [Appellant] should be encouraged to invite a community support person(s) to become part of his community[-]based treatment program. Identifying a support system of individuals that are aware of his risk factors and that hold him accountable will be an important part of maintaining safety in the community.

Commonwealth's Psychosexual Evaluation, undated, at 12.

***

First, regarding the conditions relating to the rehabilitation for inappropriate sexual conduct, Appellant argues that because the facts that he admitted to when he pled guilty to EWOC did not involve sexual conduct, the trial court abused its discretion in requiring Appellant to comply with the treatment and supervision conditions set forth in the Commonwealth's Psychosexual Evaluation. *Id.* He also asserts that the treatment and supervision recommendations contained in the report were unreasonable because they lack a sufficient nexus to the facts underlying the crime, which only include Appellant having violated his duty of care and protection by providing the Victim with drugs, alcohol, and unspecified inappropriate materials rather than any sexual misconduct. *Id.* at 25, 28. We are constrained to agree with Appellant that some of the treatment and supervision recommendations contained in the Commonwealth's Psychosexual Evaluation lack a sufficient nexus to the facts underlying Appellant's guilty plea, and that, therefore, the court abused its discretion in ordering Appellant to comply with them.

A claim that conditions of probation are unreasonable constitutes a challenge to the discretionary aspects of a defendant's sentence. ***Commonwealth v. Laughman***, 314 A.3d 569, 571 (Pa. Super. 2024). A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. ***Commonwealth v. Leatherby***, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing

court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a post-sentence motion; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. ***Id.***; ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006).

Appellant has satisfied all four prerequisites with respect to his first claim. He has filed a timely appeal, properly preserved this issue in post-sentence motion practice, and included a Rule 2119(f) statement in his brief to this Court. Furthermore, a claim that a particular probation condition is not reasonable due to the lack of a nexus between the restriction and the rehabilitative needs of the defendant presents a substantial question. ***Commonwealth v. Carr***, 262 A.3d 561, 567 (Pa. Super. 2021) (disapproved of on other grounds by ***Commonwealth v. Berry***, 323 A.3d 641 (Pa. 2024).

As a general matter, the Sentencing Code requires the sentencing court to impose a sentence that is "consistent" with "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Our standard of review in this context is well-established:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse

of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted). "The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (citations omitted). In conducting our review, this Court must also "have regard" for: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the opportunity of the sentencing court to observe the defendant, including any presentence investigation; (3) the findings upon which the sentence was based; and (4) the Pennsylvania Sentencing Guidelines. 42 Pa.C.S. § 9781(d)(1)-(4).

The sentencing court is required to assess and order probation conditions "based on individualized circumstances [and f]ollowing an individualized assessment of the defendant, including [his] history and the and the underlying crime or crimes committed[.]" *Id.* at § 9763(b) "[T]he court shall attach only those conditions that [it] deems necessary and the least restrictive means available to promote the defendant's rehabilitation and protection of the public[.]" *Id.* The scope and substance of probation conditions is governed by 42 Pa.C.S. § 9763(b), which provides a non-

- 11 -

exhaustive list of potential conditions. Pursuant to a catchall provision in this statute, the sentencing court is generally empowered to impose probation conditions that require a defendant "to do things" that are "reasonably related to rehabilitation." **Id.** at § 9763(b)(15). Thus, "[w]hile sentencing courts have discretion to impose conditions of probation, such conditions must be reasonable and devised to serve rehabilitative goals, such as recognition of wrongdoing, deterrence of future criminal conduct, and encouragement of law-abiding conduct." **Commonwealth v. Hall**, 80 A.3d 1204, 1215 (Pa. 2013).

One aspect of the "reasonableness" of the conditions of probation is that the probation condition must have a nexus to the crime convicted. In **Commonwealth v. Houtz**, 982 A.2d 537, 540 (Pa. Super. 2009), the defendant pled guilty to Corruption of Minors and Indecent Assault. **Id.** at 537. The trial court imposed as a condition of probation, *inter alia*, the prohibition of possessing or having access to a computer or the internet. **Id.** at 538. This Court found that this condition was not reasonably related to her rehabilitation or to the crimes that she had committed because there was "no **evidence** that [the defendant] used the computer/[i]nternet for sexual explicit material involving minors or . . . to establish and cultivate inappropriate relationships." **Id.** at 541 (emphasis added).

Similarly, in **Commonwealth v. Stewart**, 867 A.2d 589 (Pa. Super. 2005), the defendant challenged the discretionary aspects of his sentence after the sentencing court "considered as an aggravating factor two counts of

attempted aggravated assault and one count of statutory sexual assault that had been *nolle prossed* pursuant to [a] guilty plea agreement." **Id.** at 591. In addressing this claim, the **Stewart** Court noted that a court may only sentence a defendant for an offense to which he has pled guilty; "undertak[ing] to penalize the defendant for other offenses . . . would run afoul of due process." **Id.** at 593 (citing **U.S. v. Metz**, 470 F.2d 1140, 1143 (3d Cir. 1972), *cert. denied sub nom* **Davenport v. U.S.**, 411 U.S. 919 (1973) (internal quotation marks omitted)). Following its review, the **Stewart** Court held that the trial court improperly relied on facts and conduct supporting charges the Commonwealth ultimately *nolle prossed* in imposing an aggravated range sentence. **Stewart**, 867 A.2d at 593 (explaining that "a manifest abuse of discretion exists when a sentence is enhanced due to charges that have been *nolle prossed* as part of a plea agreement, because notions of fundamental fairness are violated").

Applying these principles to this case, by imposing as a condition of probation all fifteen of the recommendations that Ms. Young included in the Commonwealth's Psychosexual Evaluation, the trial court imposed conditions that addressed rehabilitation for inappropriate sexual conduct. When Appellant pled guilty to EWOC, however, he only admitted to providing the Victim with drugs, alcohol, and unspecified inappropriate materials and did not admit to any inappropriate sexual conduct. In particular, we find that the conditions set forth in paragraphs 1, 2, 8, 11, and 14 are based on the assumption that Appellant admitted that he engaged in inappropriate sexual

conduct and, thus, those conditions do not have a nexus to the facts to which Appellant admitted and the charges to which he pled guilty.  Like the Court in **Houtz**, we find no nexus to the facts underlying Appellant's EWOC conviction and, therefore, conclude the trial court abused its discretion in requiring rehabilitation for this conduct.[6]

We note, however, that the remaining recommendations have a nexus to the facts to which Appellant pled guilty and the trial court properly imposed them.

In sum, we find that the trial court abused its discretion by imposing conditions of probation that have no nexus to the facts to which Appellant admitted and the charges to which he pled guilty and thus, we remand for imposition of appropriate conditions.

***

In his third issue, Appellant argues that the trial court improperly relied on the Commonwealth's Psychosexual Evaluation, generally, for several

_____

[6] The Commonwealth analogizes this case to **Commonwealth v. Aumick**, 297 A.3d 770 (Pa. Super. 2023) (*en banc*), in which a SOAB evaluator considered unproven allegations and *nolle prossed* charges when recommending that the trial court designate a defendant a Sexually Violent Predator ("SVP").  Commonwealth's Br. at 19-21 (citing **Aumick**, 297 A.3d at 782).  We reject this argument for two reasons.  First, the instant case involves the imposition of a sentence, which carries with it constitutional protections, while **Aumick** involves the designation as an SVP—a non-punitive collateral consequence—which does not.  Secondly, as discussed above, the fact that there is no nexus between the probation conditions that address inappropriate sexual conduct and Appellant's guilty plea invalidates those conditions.  Therefore, whether Ms. Young relied on allegations the Commonwealth did not prove in her report is of no moment.

reasons. First, Appellant argues that the conditions recommended violate his due process rights by being void for vagueness. He also argues that Ms. Young did not sign the evaluation and did not express her opinions to a reasonable degree of professional certainty. Finally, Appellant argues that the Commonwealth produced the report in an untimely manner.[7] Appellant's Br. at 42-64. We address these claims *seriatim*.

First, Appellant contends generally that the court erred in considering the evaluation because Ms. Young's recommendations were vague and overly broad and, therefore, violated his due process rights. *Id.* at 53-55. In particular, he takes issue with two specific provisions: one that states that "special precaution should be paid to [Appellant's] living situation given that children visit the home" and another that states that Appellant "should be encouraged to participate in ongoing treatment or a twelve-step program such as Alcoholics or Narcotics Anonymous to support his continued sobriety." *Id.* at 54-55. Appellant argues that these conditions "are essentially setting Appellant up to fail insofar as they do not provide sufficient guidance to a probationer about the specific rules one must follow in order to avoid a potential probation violation." *Id.* at 55.

Probation and parole conditions are subject to the constitutional doctrines of vagueness and overbreadth. *Commonwealth v. Perreault*, 930

---

[7] Appellant also reiterates his claim that Ms. Young improperly relied on facts not proven in developing her recommendations. Appellant's Br. at 42-52. We addressed that issue earlier in this Opinion.

A.2d 553, 559 (Pa. Super. 2007). A probation condition is void for vagueness if a person of ordinary intelligence cannot understand the conduct is prohibited. *Id.* at 559 n.1 (citing ***Hill v. Colorado***, 530 U.S. 703 (2000)). Vagueness and overbreadth challenges are reviewed with the strong presumption of legality. A defendant has the heavy burden of proof to show otherwise. *Id.*

A sentencing court may state specific probation conditions in a generalized manner. ***Commonwealth v. Blango***, 327 A.3d 670, 677 (Pa. Super. 2024). The Probation Department then has the authority to issue more specific conditions so long as they are in furtherance of the trial court's conditions. *Id.*

Following our review, we conclude that those probation conditions that we have determined were within the trial court's discretion to impose—which all place some sort of restrictions on Appellant's access to children, drugs, alcohol—are not unconstitutionally vague or overbroad. Instead, they are such that a person of ordinary intelligence could easily understand the conduct that the recommendations intend to restrict. Moreover, to the extent that Appellant claims that some of the recommendations were presented as suggestions and not specific conditions, Montgomery County Adult Probation has the authority to use the suggestions to impose more specific conditions.

Next, Appellant claims that the court erred in relying on the Commonwealth's Psychosexual Evaluation because Ms. Young did not state her clinical impressions with a degree of psychological certainty, and,

therefore, they were not reliable. Appellant's Br. at 55-61. He argues that Ms. Young "failed to provide an opinion within her report that rises to the level of legally competent evidence" because she used "language that that shows uncertainty," including: "it is likely," "it is possible," and "most closely aligns." *Id.* at 56-57. He further contends that the court erred in considering the Commonwealth's Psychosexual Evaluation because Ms. Young did not sign or date it. *Id.* at 58. Last, Appellant assails the court for giving more weight to the Commonwealth's Psychosexual Evaluation than to Appellant's Psychosexual Evaluation. *Id.* at 59-61. Appellant's claims fail.

First, our Supreme Court has held that "in this jurisdiction, experts are not required to use 'magic words'" for their expert opinions to be legally competent. ***Commonwealth v. Spotz***, 756 A.2d 1139, 1160 (Pa. 2000) (citation omitted) (explaining expert opinion need not include "magic words" of reasonable degree of certainty to be admissible). Rather, courts may consider the substance of an expert's testimony or report to determine whether her opinions were based on a reasonable degree of professional certainty. *Id.*

Here, the trial court considered the substance of Ms. Young's report, in which she identified, *inter alia*, Appellant and the affidavit of probable cause as the sources of her information and detailed her methodology and ultimately concluded that Appellant was at an average risk of recidivism. Commonwealth's Psychosexual Evaluation at 1-3, 8. She also concluded, based on, *inter alia*, Appellant's refusal to discuss his offense, his access to

potential new victims, and his failure to cooperate with her, that Appellant presented a potential source of concern for rehabilitation. *Id.* at 11. Thus, even though Ms. Young did not use the "magic words," the court did not err in concluding, following its consideration of the substance of Ms. Young's report, that her opinions were based on a reasonable degree of professional certainty.

We next find that Appellant has waived his claim that the court should not have considered the Commonwealth's Psychosexual Evaluation because Ms. Young did not sign or date it. Appellant did not develop this claim with citation to and discussion of controlling authority and thus, waived our consideration of it. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (internal citations omitted) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. . . . This Court will not act as counsel and will not develop arguments on behalf of an appellant."). Appellant's failure to support his claim with pertinent discussion of and citation to legal authority has hindered our ability to review it. *See Commonwealth v. Gould*, 912 A.2d 869, 873 (Pa. Super. 2006) (holding that appellant waived issue on appeal where he failed to support claim with relevant citations to case law and record).

We likewise find that Appellant waived our review of his claim that the trial court gave undue weight to the Commonwealth's Psychosexual Evaluation

and insufficient weight to Appellant's Psychosexual Evaluation. Our review of the record indicates that Appellant has raised this claim for the first time on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the [lower] court are waived and cannot be raised for the first time on appeal."). Because Appellant did not preserve this issue by raising it before the trial court, it is waived.

Next, Appellant claims that the court should not have considered the Commonwealth's Psychosexual Evaluation because the Commonwealth produced it immediately before the sentencing hearing. Appellant's Br. at 61-64. We reject this claim.

The comment to Pa.R.Crim.P. 703 provides that disclosure of all pre-sentence reports and related psychiatric reports "should be made in sufficient time for counsel to prepare for the sentencing hearing." Pa.R.Crim.P. 703 cmt. The Rule does not, however, explain what the legislature meant by "sufficient time" nor does it provide that exclusion of an untimely produced report is the appropriate remedy for untimely disclosure.

Here, Appellant's counsel notified the court that she had only received a copy of the Commonwealth's Psychosexual Evaluation by email the day before the sentencing hearing, and argued that, "in light of the late notice of the report" counsel objected to the court considering it. N.T. Hr'g at 7. The court offered counsel a continuance, which she declined because the court had indicated that it intended to impose the agreed-upon custodial sentence and Appellant was "going to go to jail today one way or another." *Id.*

Our review indicates that Appellant did not argue at his sentencing hearing or in his brief to this Court that his counsel's receipt of the Commonwealth's Psychosexual Evaluation the day before the sentencing hearing prevented counsel from adequately preparing for the hearing.[8] Accordingly, and in light of Appellant's counsel's decision to decline the trial court's offer to continue the hearing, we reject Appellant's objection to the evaluation's untimely production.

***

In his final issue, Appellant contends that his sentence is illegal because the trial court did not announce in open court that it was imposing on probation the conditions set forth in the Commonwealth's Psychosexual Evaluation. Appellant's Br. at 66-68.

A challenge to the discrepancy between the written sentencing order and the oral sentence implicates the legality of the sentence. **Commonwealth v. Willis**, 68 A.3d 997, 1010 (Pa. Super. 2013). "[W]here there is a discrepancy between the sentence as written and orally pronounced, the written sentence generally controls." **Id.** "A sentence, as any other judgment, is construed in its entirety according to the canons of construction and so as to give effect to the intent of the sentencing court." **Id.** (citation omitted); **see also Commonwealth v. Borrin**, 80 A.3d 1219, 1226 (Pa.

---

[8] To the contrary, based on our review of the notes of testimony, the vigorous advocacy of Appellant's counsel demonstrates that counsel, in fact, had sufficient time to prepare properly and effectively for the sentencing hearing.

2013) (OAJC) (noting that the text of a sentencing order, not the words at sentencing, determines the court's intent). The court may modify or alter a criminal sentence within 30 days if no party has taken an appeal. 42 Pa.C.S. § 5505.

Here, the trial court's written sentencing order imposed conditions not announced in open court. Nevertheless, the court's intent to impose the conditions is clear; the court held a contested hearing with reports specifically addressing the conditions of probation. Furthermore, if the court had not intended to impose the conditions in its written order, it would have granted Appellant's post-sentence motion and modified the sentencing order to reflect its statement in court that did not include any probationary conditions, as authorized by Section 5505. The court's decision to deny Appellant's post-sentence motion and not to modify the sentencing order demonstrates its intention to order compliance with the Commonwealth's Psychosexual Evaluation as a condition of probation. Accordingly, we find that Appellant's claim that his sentence is illegal fails.

In sum, first, we affirm the custodial portion of Appellant's judgment of sentence. Second, we vacate the probationary portion of Appellant's judgment of sentence and remand for the trial court to remove the conditions set forth in paragraphs 1, 2, 8, 11, and 14 of the Commonwealth's Psychosexual Evaluation. To the extent that these recommendations can be modified to address behavior that Appellant admitted that he engaged in, the trial court may modify those recommendations. Since the remaining

recommendations address rehabilitation for the conduct to which Appellant admitted, the trial court is to re-impose them as conditions of probation.

Judgment of sentence affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judge Kunselman joins the opinion.

Judge Sullivan notes dissent.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/6/2026